UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES ROBERTS,<br>           Plaintiff,<br><br>     v.<br><br>HAYWARD UNIFIED SCHOOL DISTRICT,<br>           Defendant. | Case No. 18-cv-02209-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 30 |

      In this employment discrimination suit against Defendant Hayward Unified School District ("Defendant" or "HUSD"), Plaintiff Dr. Charles Roberts alleges claims for racial discrimination in violation of both Title VII of the Civil Rights Act ("Title VII") and California's Fair Employment and Housing Act ("FEHA"), age discrimination in violation of FEHA, failure to prevent racial and age discrimination in violation of FEHA, and breach of public policy in violation of state law.[1] Plaintiff's suit arises from his termination as Chief Facilities Officer and HUSD's subsequent refusal to consider him for re-employment. Because Plaintiff's claims raise genuine issues of material fact as to whether Defendant's stated reason for terminating Plaintiff was pretextual, the Court DENIES Defendant's motion.

## BACKGROUND

### A. Factual Background

      Plaintiff is African-American, was born in 1971, and worked as Chief Facilities Officer at HUSD from September 2015 to August 6, 2017. (Dkt. Nos. 38 at 2-3 & 1.)[2] As Chief Facilities Officer, Plaintiff earned a salary[3] paid by the Measure L Bond Program. (Dkt. No. 30-2 at ¶ 2.) When HUSD reorganized the Maintenance and Operations Department, Defendant eliminated Plaintiff's position. (Dkt. No. 30-2 at ¶¶ 3, 5.) Plaintiff was one of just three African-Americans

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4 & 13.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[3] Plaintiff alleges that he earned $205,236.12 per year. (Dkt. No. 1.)

on the senior leadership of HUSD. (Dkt. No. 38 at 2.) The Layoff Notice was signed by Director of Classified Human Resources Fernando Yanez and delivered to Plaintiff on June 8, 2017. (Dkt. Nos. 30-2 at 31 & 30-1 at 13, Roberts Depo. at 43-44.) The Layoff Notice said that on June 7, 2017, the Board of Education "took action . . . to eliminate or reduce certain positions due to a lack of work or lack of funds." (Dkt. No. 39-2 at 10.) Prior to Plaintiff's receipt of the Layoff Notice, Superintendent Dr. Matt Wayne and Assistant Superintendent of Human Resources Delia Ruiz had two conversations with Plaintiff regarding HUSD's intent to eliminate his position and opportunities to apply for two new openings: Director III FMOT and Bond Coordinator. (Dkt. No. 30-1 at 12, Roberts Depo. at 38-39; Dkt. Nos. 30 at 7 & 37 at 8.) Plaintiff was told he "would not be selected regardless of how high [he] was ranked," referring to a merit-based process that narrowed the field to three candidates. (Dkt. Nos. 38 at 3 & 39-2 at 5, Wayne Depo. at 42 & 39-3 at 5, Ruiz Depo. at 27-28.) Plaintiff did not apply to either of the two openings after being laid off. (Dkt. No. 30-2 at ¶ 10.) HUSD subsequently hired Tim Cody to the Director III FMOT position and Ernesto Ramirez to the Bond Coordinator position. (Dkt. No. 30 at 8.)

### B. Plaintiff's Allegations

Plaintiff alleges that he was discriminatorily fired from his position as Chief Facilities Officer at HUSD on the basis of his race and age. (Dkt. No. 1.) In addition, Plaintiff alleges that prior to his firing, he was discriminatorily discouraged from applying to the new positions at HUSD that emerged from the reorganization. (Dkt. Nos. 30 at 11, Roberts Depo. at 31-32 ("I was told not to re-apply because I would not be hired").

### C. Procedural History

Plaintiff filed his complaint on April 13, 2018, seeking equitable relief (including reinstatement) and damages, after filing with the EEOC and state agencies on November 1, 2017. (Dkt. Nos. 1 & 1-1 at 6.) Plaintiff brings five claims: (1) racial discrimination under Title VII, (2) racial discrimination under FEHA, (3) age discrimination under FEHA, (4) failure to take reasonable steps to prevent discrimination under FEHA, and (5) violation of public policy in California. (Dkt. No. 1.) Defendant moved for summary judgment on all claims on January 24, 2019. (Dkt. No. 30.) Plaintiff opposes Defendant's motion. (Dkt. No. 37.) Defendant replied on

February 12, 2019.  (Dkt. No. 41.)  The Court heard oral argument on February 28, 2019.

**LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*  At summary judgment, a court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, then the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

**DISCUSSION**

Plaintiff alleges racial and age discrimination arising from the termination of his employment.  The burden-shifting analysis for employment discrimination claims is the same under federal and California law and was set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802 (1973).  Under *McDonnell Douglas*, Plaintiff has the initial burden to establish a *prima facie* case of discrimination. *Id.*  To show a *prima facie* case of discrimination, plaintiffs generally must demonstrate that (1) they are a member of a protected class, (2) they were qualified for the position they sought and were performing competently in the position they held, (3) suffered an adverse employment decision, and (4) "some other

3

circumstance suggests discriminatory motive." *See Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008); *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 355 (Cal. 2000). The test is "not intended to be an inflexible rule." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978); *see also Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, n.6 (explaining that the specific elements of the *prima facie* case for purposes of the burden-shifting analysis under *McDonnell Douglas* may vary depending on the particular facts and type of discrimination claimed).

If a plaintiff succeeds in making a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection." *Warren v. City of Carlsbad*, 58 F.3d 439, 442 (9th Cir. 1995). If the employer carries this burden, then the plaintiff must demonstrate that the given reason is merely a pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000).

Plaintiff's claims of racial and age discrimination are discussed in turn, followed by the related claims regarding failure to prevent discrimination and wrongful discharge in violation of public policy.

## I. Racial Discrimination Claims (Counts 1 and 2)

Defendant concedes that Plaintiff has shown a *prima facie* case[4] of racial discrimination.

---

[4] To establish a *prima facie* case of racial discrimination, Plaintiff may show that he belongs to a protected class, he was discharged, he was qualified for and adequately performing the job from which he was discharged, and others not in his protected class were treated more favorably. *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993). Plaintiff is a member of a protected class as an African-American man. (Dkt. No. 1; 42 U.S.C.A. § 2000(e)-2(a)(1).) He was qualified for the position from which he was fired, as Defendant has not rebutted any of Plaintiff's allegations that his credentials (*i.e.*, holding a doctorate and winning design awards during his career) were adequate. (Dkt. Nos. 1 & 30-2, Ex. A at 8 (listing job responsibilities).) He was fired by Defendant, and he was replaced by Tim Cody (in the Director III FMOT position) and Ernesto Ramirez (in the Bond Coordinator position), neither of whom is African-American. (Dkt. No. 30 at 8.)

4

(Dkt. No. 30 at 6.) Thus, the burden shifts to Defendant to demonstrate a nondiscriminatory reason for Plaintiff's termination. *See Warren*, 58 F.3d at 442.

### 1. Nondiscriminatory Reason

Defendant argues that Plaintiff's position was "eliminated as part of a budgetary re-organization of HUSD's [Maintenance and Operations] Department." (Dkt. No. 30 at 12.) Defendant asserts that the reorganization "allowed [Defendant] to shift responsibilities and funding sources for various positions resulting in a savings to the General Fund of approximately $84,000." (*Id.*; Dkt. No. 30-2 at ¶ 7.) As evidence of the reorganization, and notwithstanding the Layoff Notice's mention of "lack of work or lack of funds," Defendant submits the Board of Education Summary Report ("Summary Report") presented by Dr. Wayne and accepted by the Board. (Dkt. No. 30-2 at 5.) The Summary Report reflects that the elimination of Plaintiff's Chief Facilities Officer position resulted in "no savings to the general fund" on its own, but that one of the new positions created, the Director III FMOT position, is 25% funded from the Measure L Bond Program. (*Id.* at 7.) Dr. Wayne testified that the reorganization "also allowed [HUSD] to pay the Director III FMOT position at a lower pay scale than the Director II M&O position creating additional savings to the General Fund." (*Id.* at ¶ 6.) The stated purpose of the reorganization, according to the Summary Report, was to "reduce costs and update positions based on a revised scope of work to result in overall improved efficiencies." (*Id.* at 5.)

Because Defendant has carried its burden of showing a nondiscriminatory reason for terminating Plaintiff, the burden shifts to Plaintiff to raise a genuine issue as to whether Defendant's stated explanation was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802.

### 2. Pretext

Plaintiff raises three arguments in support of his contention that Defendant's stated explanation was pretextual. First, Plaintiff asserts that racial animus exists at HUSD generally. Second, Plaintiff contends that Defendant actually gave him four different explanations for the termination of his employment and a reasonable trier of fact could find that each is factually untrue. Third, Plaintiff discredits Defendant's reasons because they are multiple and have

5

"shifted" such that no one is worthy of credence regardless of any factual basis. (Dkt. No. 37 at 11.) Although Plaintiff's first argument fails to raise a genuine issue of material fact as to pretext, Plaintiff's second and third arguments identify triable issues for the factfinder, and thus Plaintiff's racial discrimination claims survive summary judgment.

*Plaintiff Fails to Raise a Genuine Issue of Material Fact as to Whether Racial Animus at HUSD Makes Defendant's Stated Reason Pretextual*

As to evidence of racial animus, Plaintiff cites racially derogatory remarks by his coworker, Daniel Gonzales, and asserts that Mr. Gonzales has spoken to Dr. Wayne complaining about Plaintiff. (Dkt. No. 30-1 at 9, Roberts Depo. at 21-22.) At the summary judgment stage, Plaintiff may raise an issue of material fact as to pretext with "direct evidence of the employer's discriminatory motive." *Noyes v. Kelly Svcs.*, 488 F.3d 1163, 1170-71 (9th Cir. 2007) (citing *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003)). Here, however, without a closer connection between Mr. Gonzales' alleged racial animus and his alleged conversations with Dr. Wayne, Plaintiff's argument is insufficient to establish pretext. *See Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) ("Stray remarks not acted upon or communicated to a decision maker are insufficient to establish pretext."); Dkt. No. 30-1 at 9, Roberts Depo. at 23-25 (questioning whether Plaintiff had any knowledge of whether Dr. Wayne knew about Mr. Gonzales' comments). Dr. Wayne testified that he had "no knowledge beyond what [he] learned through this litigation regarding . . . racially derogatory comments made by . . . [Mr.] Gonzales about Plaintiff" and that "[a]ny comments Mr. Gonzales made about Plaintiff to me at any time did not impact my decisions during the re-organization process in any way." (Dkt. No. 30-2 at ¶ 10.) Plaintiff has not offered any evidence that Mr. Gonzales communicated allegedly racist sentiments to the decision-maker in Plaintiff's termination, Dr. Wayne, or even to Plaintiff himself. (Dkt. No. 30-1 at 9, Roberts Depo. at 24:21-25 (answering "No" to the question of whether "Mr. Gonzales ever made any derogatory racial comments to you").) Because Plaintiff has not shown that the comments had any connection to the hiring decision, this evidence is insufficient to raise a genuine issue as to pretext.

Plaintiff also contends that former Superintendent Stan Dobbs, an African-American fired

from HUSD, "would testify to patterns of discrimination against many non-whites." Plaintiff's contention about Mr. Dobbs is insufficient to establish pretext because it is purely speculative given that Plaintiff has not submitted any testimony from him. To give rise to a genuine dispute of material fact, a Plaintiff must provide evidence, not unsupported assertions. *See Liberty Lobby*, 477 U.S. at 250 ("[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial'") (quoting Fed. R. Civ. P. 56(e)). Here, Plaintiff has not supported his assertions about Mr. Dobbs' impressions of HUSD, or its alleged racially discriminatory patterns of behavior, with any admissible evidence.

On this record, no reasonable trier of fact could find for Plaintiff on the theory that racial animus at HUSD generally makes Defendant's explanations mere pretext for discrimination.

*Plaintiff Raises a Genuine Issue of Material Fact as to the Truth of Each of Defendant's Explanations*

Plaintiff asserts that Defendant offered not one but four[5] reasons for terminating his employment and that each is untrue. These reasons include: (A) that HUSD was undergoing a budgetary reorganization to benefit the General Fund (as Defendant argues in its motion), (B) that HUSD had a "lack of work or lack of funds" requiring the elimination of Plaintiff's position, (C) that HUSD wanted a candidate for the new positions with "fresh ideas," and (D) that Plaintiff had not demonstrated the leadership skills for which HUSD was looking. Plaintiff has shown a genuine issue of material fact as to whether each was pretextual because each may be false.

A. <u>Whether HUSD Reorganized to Save Money for the General Fund</u>

As to Defendant's stated explanation that Plaintiff was eliminated as part of a budgetary reorganization, Plaintiff contends that none of his salary was paid by the General Fund, (Dkt. No. 30-1, Roberts Depo. at 30), and thus any anticipated savings from his termination would not

---

[5] Plaintiff's opposition characterizes Defendant's reasons as threefold, (Dkt. No. 37 at 8 (listing "lack of work or funds," "need for fresh ideas," and "lack of leadership skills")), but he argues that "lack of work or lack of funds" did not accurately describe the reorganization as HUSD presents it, even if the Education Code allows use of that language. The Court therefore analyzes the "lack of work or lack of funds" and "reorganization" reasons separately.

7

actually lead to savings in the General Fund. (Dkt. No. 38 at 2.) In its reply, Defendant asserts that "Plaintiff did not provide any evidence that the reorganization did *not* result in the savings claimed by [Dr. Wayne] or that the Board did not direct [Dr. Wayne] to cut costs and ultimately approve the elimination of Plaintiff's position along with several other positions." (Dkt. Nos. 41 at 3 & 30 at 21 (arguing that Plaintiff's "lack of understanding of how the re-organization [sic] was implemented is not evidence that it was not successful or legitimate").)

Defendant's argument misunderstands Plaintiff's burden; Plaintiff's testimony and evidence in the record do raise a genuine issue as to pretext. At the summary judgment stage, Plaintiff may show pretext using "indirect evidence that undermines the credibility of the employer's articulated reasons." *Noyes*, 488 F.3d at 1170-71 (citing *Raad*, 323 F.3d at 1194). The Summary Report cited by both Plaintiff and Defendant is ambiguous as to whether the elimination of Plaintiff's Chief Facilities Officer position and the creation of the Director III FMOT and Bond Coordinator positions effectuated a savings to the General Fund. (Dkt. Nos. 39-5 at 3 (Plaintiff's opposition) & 30-2 at 7 (Defendant's motion).) The footnotes of the Summary Report state that there was "no savings to the general fund" from elimination of Plaintiff's position. (Dkt. No. 39-5 at 3.) Moreover, there is no further explanation in the Summary Report of whether the facts that "[t]he FMOT Director will be funded 75% from the [G]eneral [F]und and 25% from Measure L" and "[t]he Bond Coordinator will be funded out of Measure L" served the reorganization's purported purpose (to save money for the General Fund). At summary judgment, all doubts must be resolved in favor of Plaintiff, and the first footnote standing on its own contradicts Defendant's argument that HUSD eliminated Plaintiff's position to save General Fund money since there is no other evidence that the Board—which approved the reorganization—was told that the elimination of Plaintiff's position saved General Fund money. To put it another way, a reasonable trier of fact could find that the Board understood that eliminating Plaintiff's position would not result in any General Fund savings. As a result, Plaintiff has met his burden of showing a genuine issue of material fact as to whether Defendant's explanation as to the termination of his employment—to save money to the General Fund—was pretextual.

//

B. <u>Whether Plaintiff's Position was Eliminated due to "Lack of Work or Lack of Funds"</u>

Plaintiff points to the Layoff Notice, (Dkt. No. 39-2 at 10), issued to Plaintiff on June 8, 2017, which said that the Board of Education "took action . . . to eliminate or reduce certain positions due to a lack of work or lack of funds" as evidence of pretext since the record supports a finding that his position was not eliminated because of a lack of work or lack of funds. Defendant responds that in HUSD's conversations with Plaintiff prior to the Layoff Notice it described the "action" as layoffs as part of a reorganization notwithstanding what the formal Layoff Notice stated. (Dkt. No. 30-1 at 11, Roberts Depo. at 30-31, 39; *see also* Dkt. No. 30-2 at ¶ 8 ("Plaintiff was informed . . . that his position would be eliminated by the re-organization [sic]").) Defendant contends, without citation, that "lack of work or lack of funds" is language required by the California Education Code to describe any layoffs for a reorganization and therefore the Layoff Notice does not support a reasonable inference that Defendant gave Plaintiff conflicting explanations for the termination of his employment. (Dkt. No. 30 at 8; *see also* Dkt. No. 30-1 at 22, Ruiz Depo. at 36-37 (stating the Assistant Superintendent's belief that "it has to be lack of work and/or lack of funds" to lay someone off for a reorganization).)

The Education Code addresses "layoff[s] for lack of work or lack of funds" at § 45308, but the provision applies only to "classified employees." Cal. Educ. Code § 45308; *see also* Cal. Educ. Code § 45101(a), (g) (defining terms). "There are two general categories of public school employees under California law: certified employees, or teachers, and classified employees, who are not subject to the certification requirements of teachers." *Gately v. Cloverdale Unified Sch. Dist.*, 156 Cal. App. 4th 487, 493 (2007) (citing Cal. Educ. Code §§ 44800, 45100, 45103(a)). Section 45308 provides that classified employees "shall be subject to layoff for lack of work or lack of funds," but such layoffs are valid only when they are the result of a "bona fide reduction or elimination of the service" being performed by any department. Cal. Educ. Code § 45308; *see Gately*, 156 Cal. App. 4th at 496 (citing *Short v. Nevada Joint Union Sch. Dist.*, 163 Cal. App. 3d 1087, 1097 (1985)).

Plaintiff asserts that the Measure L Bond Program, from which his salary was solely paid, had at least $180,000,000 at the time he was laid off. (Dkt. No. 38 at 2.) Plaintiff testified that

9

"two months before [he] received [his] layoff letter . . . we received about $130 million, so there was no way there was a lack of funds for my work." (Dkt. No. 30-1 at 11, Roberts Depo. at 30.) The Bond Fund paid for programs that Plaintiff managed, and another Bond measure was "passed by the electorate," presumably extending the amount of work associated with the projects. (Dkt. No. 38 at 2.) Plaintiff thus argues that there was no "lack of work or lack of funds" at HUSD or in Plaintiff's job responsibilities, contrary to Defendant's stated reason in the Layoff Notice. Defendant does not cite a specific section of the Education Code in either motion or reply to support its argument that the phrase "lack of work or lack of funds" is a term of art required by law to describe HUSD's reorganization. (Dkt. Nos. 30 at 8 & 41 at 4.)

Plaintiff has raised a genuine issue as to whether "lack of work or lack of funds" applied—in its common-sense meaning or legally under the Education Code—to his termination and therefore whether the Layoff Notice includes a merely pretextual rationale. There is no evidence in the record that Plaintiff was a certified employee rather than a classified employee. *See also* Cal. Educ. Code § 45256 (listing the few groups of employees who are not presumptively classified). Assuming that Plaintiff is a classified employee such that § 45308 would be available to HUSD as a basis for firing, Defendant erroneously invoked "lack of work of lack of funds" in Plaintiff's Layoff Notice because there was no "reduction or elimination of the service" performed by Facilities, Maintenance, Operations and Transportation at HUSD. According to Mr. Wayne, the two new positions post-reorganization "encompassed all of the job responsibilities of the CFO and Director II M&O positions;" furthermore, there appears to be no change at all to the work of Measure L that Plaintiff oversaw in the CFO position. (Dkt. Nos. 30-2 at ¶ 6 & 39-2 at 6, Wayne Depo. at 50:21-50:2.) Because Plaintiff has shown that neither the funding for nor the responsibilities associated with his position had been reduced or eliminated, Plaintiff has demonstrated a genuine issue of material fact as to the truth of Defendant's June 8, 2017 justification and thereby whether it was pretextual.

C. Whether HUSD Wanted "Fresh Ideas"

Plaintiff testified that Dr. Wayne told him in the pre-layoff conversations that the

Superintendent wanted someone with "fresh ideas" in the new positions.[6] (Dkt. No. 30-1 at 8, Roberts Depo. at 19.)

Plaintiff contends that the "fresh ideas" justification was a pretext for firing him because of how his former projects are now being run by his successors. In particular, Plaintiff offers evidence that the "projects . . . [formerly managed by him] continued on the same course and schedule he had set up [under the new employees]." (Dkt. No. 38 at ¶ 5, subpart (c).) In support of the "fresh ideas" comment, Defendant offers evidence that "Dr. Wayne explained during his deposition that he wanted the person in charge of the bond to also manage the facilities department and someone who could clearly present the Measure L information." (Dkt. No. 41 at 6.)[7] Drawing all inferences in Plaintiff's favor, the "fresh ideas" justification may have been disingenuous given that HUSD's eventual hires did not demonstrate new approaches or even possess new responsibilities that would give rise to them. (*See also* Dkt. Nos. 30-3 (Declaration of Ernesto Ramirez) & 30-4 (Declaration of Tim Cody) & 30-2 at 8-14 (listing job responsibilities), 2 ("these two positions encompassed all of the job responsibilities of the CFO and Director II M&O positions . . .") & 39-2 at 6, Wayne Depo. at 50-51 (explaining "there was [no] change in direction in the building program in Measure L").)

D. <u>Whether Plaintiff did not Have Sufficient Leadership Skills</u>

It is undisputed that in their pre-layoff conversations, Dr. Wayne and Ms. Ruiz told Plaintiff he did not demonstrate the leadership skills HUSD was looking for in the two new positions that would emerge from reorganization and thus he would not be selected for these new positions even if he applied. (Dkt. Nos 39-2 at 8, Wayne Depo. at 95-96 & 30-1 at 21, Ruiz Depo. at 24 ("In the meeting that [Dr. Wayne] had with [Plaintiff], [Dr. Wayne] did tell [Plaintiff]

---

[6] Defendant asserts that Dr. Wayne recalls his words differently ("I wanted to move in a new direction"). (Dkt. No. 30-2 at ¶ 9.) Drawing all inferences in favor of the non-moving party, the Court adopts Plaintiff's recollection of the words used by Dr. Wayne. *See Tolan*, 134 S. Ct. at 1865.

[7] In a separately filed objection, (*see* Dkt. No. 43), Plaintiff objects to Defendant's argument because it was raised for the first time in a reply brief. Defendant's reply assumed *arguendo* that a *prima facie* case of age discrimination was shown and made this assertion to rebut Plaintiff's allegation that "fresh ideas" connoted a desire for youth. (*Id.* at 2.) Because the argument merely points to relevant facts already in Dr. Wayne's deposition, (Dkt. No. 39-2 at 4-5, Wayne Depo. at 41-42), Plaintiff's objection is overruled.

personally that he didn't demonstrate the leadership skills that the district needed to move forward . . ."), 27-28 ("I recall telling [Plaintiff] . . . 'I believe you're not understanding that [Dr. Wayne] is trying to tell you . . . that you have not demonstrated the leadership skills . . .").)

Plaintiff contends that a reasonable trier of fact could find that the "leadership skills" justification was not true. Plaintiff asserts that he was qualified for the Chief Facilities Officer position and the two new positions, citing as evidence his professional awards, speaking engagements at conferences, and graduation from a HUSD-funded leadership program. (Dkt. No. 38-2 at 8 (listing numerous additional leadership experiences in response to Defendant's Interrogatory No. 13).) Plaintiff's evidence of his qualifications raises a genuine issue of material fact as to whether Defendant's claim that Plaintiff lacked demonstrated leadership ability was pretextual.

*Plaintiff Raises a Genuine Issue of Material Fact as to the Credibility of Defendant's Multiple Explanations*

Plaintiff also argues that Defendant's *shifting* justifications for the termination of his employment together indicate no one justification is the true reason he was terminated and not considered for re-employment. (Dkt. No. 37 at 5.) "Fundamentally different justifications for an employer's action may give rise to a genuine issue of fact with respect to pretext." *Washington v. Garrett*, 10 F.3d 1421, 1433-34 (9th Cir. 1993); *see also Chuang*, 225 F.3d at 1127 (explaining the validity of indirect proof of pretext). Whereas the Layoff Notice signed by Mr. Yanez on behalf of HUSD cites "lack of work or lack of funds" as the reason for Plaintiff's termination, in conversations with Dr. Wayne and Ms. Ruiz only the three other reasons were cited; the Layoff Notice is the only mention in the record of the "lack of work or lack of funds" rationale. (Dkt. No. 39-2 at 10; *see also* Dkt. No. 30-1 at 22, Ruiz Depo. at 36:11-13 (explaining that Ms. Ruiz "[did]n't recall" whether "anybody said anything at the May meeting about lack of work").)

Plaintiff has shown shifting justifications. Separate reasons are not considered "shifting" unless they are incompatible. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1997). It is true that some of the reasons, such as HUSD's purported interest in fresh ideas and more leadership experience in a candidate, are compatible or even complementary. Here,

12

however, "lack of work or lack of funds" is incompatible with HUSD's desire either for fresh ideas or for leadership skills, and lack of work or lack of funds was not mentioned in the pre-layoff conversations. Drawing all reasonable inferences in Plaintiff's favor, Defendant's justifications changed over time: while earlier communication (conversations) cited Plaintiff's performance, later communication (the Layoff Notice) cited *only* a structural, budgetary constraint above and beyond Plaintiff's performance. *See, e.g., Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) (holding that an employer's silence regarding performance problems after not promoting an employee, coupled with assertions during eventual litigation that "performance . . . waned" and that they did not hire him "due to poor performance," was sufficient to show inconsistency and pretext); *see also* Dkt. No. 41 at 5 (arguing in reply that "Dr. Wayne didn't think Plaintiff was fit for the new positions and wanted someone new"). Viewing the evidence in the light most favorable to Plaintiff, Defendant offered incompatible reasons for firing Plaintiff and deployed each at different times, which could make the "proffered explanation [as a whole] 'unworthy of credence' because it is internally inconsistent." *Chuang*, 225 F.3d at 1127 (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir. 1998)). Thus, Plaintiff has raised, through Defendant's shifting justifications, a genuine issue of material fact as to pretext.

Defendant contends that HUSD's reasons are not incompatible because there are two separate adverse employment decisions or "acts": (1) the layoff and (2) being told "he would likely not get rehired if he applied." (Dkt. No. 41 at 4, 7.) There is no evidence, however, that HUSD communicated this distinction (and reasons associated with each "act") to Plaintiff or even itself viewed the decisions as separate during the pre-layoff conversations. (*See, e.g.*, Dkt. Nos. 30-1 at 21, Ruiz Depo. at 26:24-27:1 ("I just remember that [Dr. Wayne] said positions would be eliminated and new positions would be created and posted") & 30-2 at ¶¶ 7-9 (explaining that prior to Plaintiff's layoff but after telling him that his position "would [later] be eliminated," Dr. Wayne "informed him that he would need to reapply for one of the new positions to be considered").) At the second meeting in June 2017, prior to receiving the Layoff Notice, Plaintiff again asked Dr. Wayne about "why [he] was being laid off" and in the same conversation was

13

"told not to re-apply." (Dkt. No. 30-1 at 12, Roberts Depo. at 39.) Moreover, treating Plaintiff's termination and Defendant's lack of consideration in rehiring him as separate events ignores the reality of employment decisions: if Plaintiff were considered for re-employment at HUSD after his position was eliminated in even a legitimate reorganization (or outright rehired), Plaintiff likely would not have filed suit. (*See id.* at 11, Roberts Depo. at 30-31 ("[I]t just didn't make any sense that I would have been part of that reorganization. If they wanted me to report to the new position, which Tim Cody has, all they had to do was say, hey, Charles, we're doing some restructuring . . . I would have said fine, and we would have moved on . . .").) Drawing all inferences in Plaintiff's favor, Defendant's incompatible reasons were not tied to the termination or to lack of consideration for rehiring specifically but were instead connected to Defendant's decision, as a whole, to end Plaintiff's tenure at HUSD.

Taken together, Plaintiff's assertions that Defendant's explanations are both factually untrue and incompatible raise a triable issue for the jury as to pretext, which precludes summary judgment on Plaintiff's claims of racial discrimination.

**II. Age Discrimination Claim (Count 3)**

To establish a *prima facie* case of age discrimination under FEHA, plaintiffs must show they were (1) at least 40 years old, (2) performing their job satisfactorily, (3) discharged, and (4) "either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of discrimination." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1146 (9th Cir. 2017) (quoting *Schechner v. KPIX-TV*, 686 F.3d 1018, 1021 (9th Cir. 2012) (internal quotation marks omitted)). While "[r]eplacement by an older employee suggests no discrimination," it is "not necessarily fatal to [Plaintiff's] claim." *See Palmer v. United States*, 794 F.2d 534, 537 (9th Cir. 1986). Other direct or circumstantial evidence may support an inference of discrimination. *See id.*; *see, e.g., Diaz*, 521 F.3d at 1208-11 (citing statistical evidence regarding average age of workforce and identity of individuals who were not fired); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n.9 (1st Cir. 1979) (explaining that replacement by an older employee does not disprove a plaintiff's *prima facie* case conclusively, such as where an older employee may have been hired to ward off a threatened lawsuit); *Bonham*

14

*v. Dresser Indus., Inc.*, 569 F.2d 187, 195 (3rd Cir. 1977) (finding that age discrimination claims do not require proof of replacement by a younger employee and that it is "enough that [plaintiff] was discharged because of his age"). "The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253.

Here, Defendant does not dispute that Plaintiff was older than 40 at the time of the adverse employment action and was satisfactorily performing his job. *See Nidds*, 113 F.3d at 917. Defendant asserts, however, that Plaintiff was replaced by two people who are both older than him. Whereas Plaintiff was born in 1971, Tim Cody was born in 1964 and Ernesto Ramirez was born in 1962. (Dkt. Nos. 30-4 at 1 & 30-3 at 1.)

Plaintiff cites Dr. Wayne's "fresh ideas" comment during their meetings about his impending termination as evidence that gives rise to an inference of age discrimination because it "connotes youth." (Dkt. No. 37 at 10.) In general, "stray remarks are insufficient to establish discrimination." *See Merrick v. Farmers Ins. Group*, 892 F.3d 1434, 1438-39 (9th Cir. 1990) (holding that a supervisor's discriminatory comment about choosing another candidate because they are "bright, intelligent, knowledgeable [and] young man" was insufficient to shift the burden to the defendant in an age discrimination suit). Nevertheless, courts have held that remarks with a direct connection to the adverse employment decision may be sufficient to establish a *prima facie* case. *See, e.g., Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410-11 (9th Cir. 1996) (distinguishing *Merrick* on the basis of connection to the employment decision). As in *Schnidrig*, Plaintiff cites a comment made when he was discussing his interest in being considered for the new positions. (Dkt. No. 30-1 at 8, Roberts Depo. at 18-19.) Although it is a very close question, the Court concludes that Defendant's "fresh ideas" comment may support an inference of age discrimination because of its connection to the termination. In the light most favorable to the Plaintiff, "fresh" may indicate that HUSD chose to terminate him because it felt he was too old to generate new ideas. In view of the lenient *prima facie* standard, the comment is sufficient to suggest discriminatory motive.

Because Plaintiff has shown a *prima facie* case of age discrimination, the burden shifts to Defendant to show a nondiscriminatory reason for the termination. *See Warren*, 58 F.3d at 442.

### 1. Nondiscriminatory Reason

Defendant relies on the same nondiscriminatory reason: that HUSD was undergoing a reorganization to save money for the General Fund, (Dkt. No. 30 at 12), and offers the same evidence as described above. As with the racial discrimination claims, because Defendant has carried its burden of showing a nondiscriminatory reason, the burden shifts to Plaintiff to raise a genuine issue as to whether Defendant's reason was a pretext for age discrimination. *McDonnell Douglas*, 411 U.S. at 802.

### 2. Pretext

For the reasons already described, Plaintiff has shown that Defendant's reason—in addition to and combined with multiple other explanations found in the record—may have been pretextual. Plaintiff has thus raised a genuine issue of material fact that precludes summary judgment on his age discrimination claim.

## III. Failure to Prevent Discrimination (Count 4)

Plaintiff's claim for failure to prevent discrimination survives summary judgment because Plaintiff has viable claims for racial discrimination and age discrimination. California Government Code Section 12940(k) holds employers liable for "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov. Code § 12940(k). This cause of action is a separate, actionable tort enforceable upon the establishment of the usual elements of duty of care, breach, causation, and damages, but even "actual harassment" must rise to the level of FEHA discrimination to warrant a failure-to-prevent claim. *Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1313-14 (Cal. 2015). There must be predicate discrimination to which this claim attaches; an employee cannot sue their employer for not preventing discrimination that did not happen. *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998). Because Plaintiff has shown genuine issues of material fact as to whether Defendant's reason for terminating him was pretext for racial and age discrimination, Defendant's motion is denied as to Count 4.

## IV. Violation of Public Policy (Count 5)

Plaintiff's claim for violation of public policy likewise survives summary judgment

16

because of the underlying facts that present a genuine issue as to whether a wrongful termination—wrongful because it may have been discriminatory on the basis of race or age—occurred. To prevail on a cause of action for wrongful discharge in violation of public policy, Plaintiff must show (1) the termination of an employer-employee relationship, (2) that the violation of public policy was a substantial motivating reason for Plaintiff's discharge, (3) that Plaintiff was harmed, and (4) that discharge was a substantial factor in causing Plaintiff's harm. *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154 (2014); Judicial Council of California Civil Jury Instructions, § 2430 Wrongful Termination. The public policy must (1) be supported by "either constitutional or statutory provisions," (2) inure[] to the benefit of the public," (3) have been articulated at the time of discharge, and (4) be "fundamental and substantial." *Yau*, 229 Cal. App. 4th at 155.

Here, Plaintiff established that there was a terminated employer-employee relationship between him and Defendant, (Dkt. No. 1), and, as outlined above, has identified evidence sufficient to support a finding that racial and age discrimination were the motivating factor behind his firing. (*See, e.g.*, Dkt. No. 30-1 at 8-9, Roberts Depo. at 21-23.) As to the "articulation" and "public policy" prongs under *Yau*, Defendant argues that Plaintiff has not stated any statutory or constitutional provision in California law that supports Plaintiff's charges of a public policy violation. (Dkt. No. 30 at 17.) However, Plaintiff may state a claim for wrongful discharge in violation of public policy based on discrimination claims under FEHA and has done so here. *See Stevenson v. Superior Court*, 16 Cal. 4th 880, 895-96 (1997) (holding that FEHA's policy against age discrimination in employment is "fundamental" and therefore sufficient to support the common law tort claim); *see also Rojo v. Kliger*, 52 Cal. 3d 65, 74 (1990) (noting that FEHA's prohibition of racial, age, sexual, and other discrimination does not supplant the common law of California). Wrongful discharge based on other types of discrimination under FEHA, such as the racial discrimination Plaintiff alleges here, are similarly cognizable claims for violation of public policy. *See Stevenson*, 16 Cal. 4th at 906 (rejecting the dissent's argument that the broad holding in *Rojo* is distinguishable because it involved a different, but still protected, classification of discrimination under FEHA). FEHA was enacted, and was therefore articulated as public policy,

in 1980, long before HUSD discharged Plaintiff.  Defendant's motion as to Count 5 is therefore denied.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion for Summary Judgment.  This Order disposes of Docket No. 30.

**IT IS SO ORDERED.**

Dated: March 11, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge